IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 14-02095-TUC-RCC(EJM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Miguel Angel Carrizoza, | |
| Defendant. | |

Pending before the Court is the defendant's Motion for Return of Property filed pursuant to Fed.R.Civ.P. 41(g).[1] (Doc. 29.) Plaintiff filed a response to the motion and both parties filed supplemental pleadings. (Docs. 30, 37, and 38.) The issues raised by the defendant are: (1) whether U.S. Customs and Border Protection's ("CBP") Notice of Seizure and *in forma pauperis* ("IFP") application to Mr. Carrizoza constituted sufficient notice in accordance with due process of law (Doc. 29–1 at 3, 7); (2) whether the Notice of Seizure was unexpectedly "bifurcated" into a two-step process (Doc. 37 at 2);

---

[1] Rule 41(g), Federal Rules of Criminal Procedure, provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

(3) whether CBP's IFP application is unapproved by CBP's procedures (Doc. 37 at 5); and (4) whether CBP was required to accept a federal judge's finding that Mr. Carrizoza was indigent on a related criminal matter as satisfactory proof of Mr. Carrizoza's inability to pay the bond in the forfeiture proceeding. (Doc. 37 at 5.)

This Court concludes that due process was violated both by CBP's inadequate notice to Mr. Carrizoza of the IFP application process for the administrative forfeiture proceeding, and by CBP's failure to notify the defendant of the denial of his request for a waiver of bond and failure to provide him with an opportunity to post a bond.[2] Accordingly, the undersigned recommends that the District Court void the forfeiture and order CBP to either return the seized property to Mr. Carrizoza or begin judicial forfeiture proceedings.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On November 19, 2014, in Nogales, in the District of Arizona, the defendant, Miguel Angel Carrizoza, presented himself for inspection into the United States from Mexico at the Mariposa Port of Entry. (Doc. 38 at 1.) Mr. Carrizoza was the driver, registered owner and sole occupant of the 1994 Dodge Ram 2500 truck. *Id.* Mr. Carrizoza was arrested for importing a controlled substance into the United States. (Doc. 29–1 at 1.) At the time of the defendant's arrest, CBP seized Mr. Carrizoza's truck because it was subject to forfeiture under 19 U.S.C. § 1595a(a) based on a violation of 21 U.S.C. §§ 952, 841. (Doc. 29–1 at 1.)

On November 20, 2014, Mr. Carrizoza had his Initial Appearance on the drug charge. At that hearing, the Magistrate Judge made a finding that the defendant was indigent and appointed Mr. Jonathan Young as counsel. (Doc. 2.)

On December 30, 2014, CBP sent Mr. Carrizoza a Notice of Seizure and Information to Claimants NON-CAFRA Form ("Notice of Seizure") via certified mail. (Doc. 29–1 at 1.) There is no dispute that Mr. Carrizoza received the Notice of Seizure,

---

[2] Because the undersigned recommends that the District Court rule in favor of defendant based on the due process violations, the undersigned declines to address the other issues raised by defendant in his motion.

- 2 -

but there is no evidence of when he received this document as neither party submitted the return-receipt for the certified mail.

The Notice of Seizure sets forth four options for a potential claimant, and those options are also reflected in the "Election of Proceedings" Form that was included with the Notice of Seizure. First, a claimant may file a petition under 19 U.S.C. § 1618 within 30 days of the date of the Notice of Seizure seeking remission of the forfeiture. The Notice of Seizure explains that the petition need not be in any specific form, but must describe the property involved, the date and place of seizure, proof of the claimant's interest in the property, and all facts and circumstances warranting relief from forfeiture. The Notice of Seizure advises that if a claimant chooses this option, Box #1 on the Election of Proceedings form should be checked.  The Notice of Seizure further advises that by completing Box #1, the claimant is requesting an administrative processing of the case by CBP, requesting that CBP refrain from beginning forfeiture proceedings while the petition is pending, or halt administrative forfeiture proceedings if they have already commenced.

Second, at any time prior to forfeiture, a claimant may make an "Offer in Compromise" under 19 U.S.C. § 1617 and 19 C.F.R. §§ 161.5 and 171.31. If the claimant offers money in settlement of the case, the offered payment must be sent to CBP at the time of the offer (and would be returned if CBP rejected the offer). The Notice of Seizure advises that if the claimant chooses this option, then Box #2 on the Election of Proceedings form should be checked.

Third, the claimant may abandon or claim no interest in the property. If this option is chosen, Box #3 on the Election of Proceedings form should be checked.  The Notice of Seizure advises that under option three, the government may proceed with forfeiture proceedings without further involving the potential claimant.

Fourth, a claimant may request to have the forfeiture matter referred to the U.S. Attorney's Office for institution of judicial forfeiture proceedings. The Notice of Seizure advises that if a claimant chooses this option, then Box #4 on the Election of Proceedings

form should be checked. The Notice of Seizure advises that if option four is chosen, the claimant must submit to CBP a claim and cost bond in the penal sum of $5,000 or 10% of the value of the claimed property, whichever is less, but in no case shall the amount of the bond be less than $250.00. Once the claim and cost bond are filed, the case will be promptly referred to the U.S. Attorney for institution of judicial proceedings in accordance with 19 U.S.C. § 1608 and 19 C.F.R. § 162.47. The Notice of Seizure provides that the failure to submit a bond with the claim will render the request for judicial proceedings incomplete, and therefore, defective— meaning that the case will not be referred to the U.S. Attorney's Office.

However, the Notice of Seizure advises that if a claimant cannot afford to post the bond, the claimant should contact CBP so that the agency can make a determination of the claimant's financial ability to pay the bond. If CBP determines that the claimant is unable to pay the bond, the cost of the bond may be waived in its entirety. In that event, the case will promptly be referred to the U.S. Attorney's Office and the claimant may file a petition for relief with the Department of Justice pursuant to 28 C.F.R. Pt. 9.

Option four does not set forth any time deadlines for submitting a claim to have the forfeiture referred for judicial proceedings. There are also no deadlines specified for either submitting the cost bond or requesting a waiver of the bond due to indigency. Finally, neither the Notice of Seizure nor the Election of Proceedings form mentions an IFP application or how indigency must be demonstrated by a claimant.

After going through these four options, the Notice of Seizure explains that if a claimant chooses to do nothing, CBP may seek to forfeit the property and, if so, will publish notice of seizure and intent to forfeit for 30 consecutive days. When those 30 days expire, the government acquires full title to the seized property. Finally, the Notice of Seizure explains that the first notice will be posted on or about 30 days from the date of the Notice of Seizure.

On January 24, 2015, Mr. Young responded to CBP's Notice of Seizure, via certified mail, stating that he represents Mr. Carrizoza on the criminal matter and that Mr.

Carrizoza was found indigent for purposes of the criminal case; he also requested a waiver of bond in the forfeiture proceedings because Mr. Carrizoza has no financial assets (or a checking or savings account) and owns no real estate or personal property other than the truck. (Doc. 29–1 at 6–7.)  Along with his letter, Mr. Young submitted Mr. Carrizoza's Election of Proceedings form with Box #4 checked, requesting that CBP send his case to the United States Attorney's Office ("USAO") in order to institute Court Action. (Doc. 29–1 at 8.) CBP received this letter and Election of Proceedings form on January 27, 2015.

On February 6, 2015, in response to Mr. Young's letter and the Election of Proceedings form, CBP sent Mr. Young an IFP application in addition to a letter indicating that CBP was requesting additional information to prove Mr. Carrizoza's inability to post bond. (Doc. 29–1 at 10.) This correspondence was not sent via certified mail like the initial Notice of Seizure. (Doc. 29–1 at 9.)  The letter advised Mr. Young that if a completed IFP application was not received within 15 days of the date of the letter, administrative forfeiture proceedings would be initiated.

Mr. Young did not receive CBP's February 6, 2015 letter and the IFP application until June 16, 2015. (Doc. 29–1 at 12.)  In a letter to CBP dated June 17, 2015, Mr. Young explained that, through no fault of his or Mr. Carrizoza's, the U.S. Post Office temporarily misplaced all of his mail, including CBP's February 6, 2015 letter. (Doc. 29 at 2–3.) A completed IFP application was included with Mr. Young's letter. (Doc. 29–1 at 11–14.)  On June 25, 2015, CBP responded to Mr. Carrizoza with a letter, sent via certified mail, stating that CBP had received Mr. Carrizoza's completed IFP application and letter, but the administrative process had concluded and the truck was forfeited to the government on April 16, 2015. (Doc. 29–1 at 15–16.)

On July 28, 2015, Mr. Carrizoza filed his Motion for Return of Property. (Doc. 29.) Mr. Carrizoza argues that CBP's February 6, 2015 IFP application unexpectedly added a second step to the process to refer the forfeiture matter to a judicial forum (Doc. 37 at 1–2), and that CBP failed to provide Mr. Carrizoza reasonable notice of seizure

because CBP did not send the IFP application via certified mail. (Doc. 37 at 4–5.) Additionally, Mr. Carrizoza argues that CBP's IFP application is unapproved by CBP, and that CBP was required to accept a federal judge's finding that Mr. Carrizoza was indigent on the related criminal matter as evidence of his inability to post bond in the forfeiture proceeding. (Doc. 37 at 5.)

The government argues that CBP provided Mr. Carrizoza due process of law prior to forfeiting his truck to the United States. (Doc. 38 at 5.) The government also argues that it is not required to comment on CBP's internal procedures (Doc. 38 at 5), and that the only question before the court is whether CBP sent sufficient notice of the forfeiture proceedings to Mr. Carrizoza, allowing him a meaningful opportunity to reply. (Doc. 38 at 3.)

## II. DISCUSSION

### A. Jurisdiction and Notice Required Under the Due Process Clause

"[F]ederal Courts always possess jurisdiction to review whether the notice given in an administrative forfeiture proceeding afforded the claimant constitutional due process." *Garcia v. Meza*, 235 F.3d 287, 290 (7th Cir. 2000); *see also United States v. Marolf*, 173 F.3d 1213, 1216 (9th Cir. 1999); *United States v. Clagett*, 3 F.3d 1355, 1356 (9th Cir. 1993). "Because forfeitures are disfavored, forfeiture laws and their notice provisions are strictly construed . . . against the government." *United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003) (internal quotations and citations omitted). "The statutory and regulatory guidelines for forfeitures are interpreted in light of constitutional due process concerns regarding notice of impending legal proceedings." *Ritchie*, 342 F.3d at 910. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).[3]

---

[3] "Absent exceptional circumstances, written notice of forfeiture by certified mail

- 6 -

"If the notice fails to comport with the requirements of due process, the underlying forfeiture is void." *Garcia*, 235 F.3d at 290; *see Marolf*, 173 F.3d at 1216. "The district court must then set aside the declaration of forfeiture and order the Customs Service to return [the seized property] or begin judicial forfeiture in the district court." *United States v. Giraldo*, 45 F.3d 509, 512 (1st Cir. 1995).

**B. Administrative Forfeiture Provisions**

The Customs Laws set forth procedures for institution and maintenance of administrative forfeiture proceedings. *See* U.S.C. §§ 1607–1609. The statutory requirements for commencing an administrative forfeiture proceeding and providing notice to a property owner of a seizure and the intent to forfeit property are found in 19 U.S.C. § 1607(a). That statute provides that if the value of a seized vehicle does not exceed $500,000.00 and the vehicle was used to import a controlled substance, the appropriate customs officer shall send written notice of seizure together with information on the applicable procedures to each party who appears to have an interest in the seized vehicle. Generally, the U.S. Customs Service will send written notice of seizure to all known interested parties as soon as practicable, and in no case may notice be sent more than sixty (60) calendar days after the date of seizure. 19 C.F.R. § 162.92.

The statutory requirement for making a claim to seized property and requesting judicial forfeiture is found in 19 U.S.C. § 1608, which provides that:

> any person claiming such . . . vehicle . . . may at any time within twenty days from the date of the first publication of the notice of seizure file with the appropriate customs officer a claim stating his interest therein. Upon the filing of such claim, and the giving of a bond to the United States in the penal sum of $5,000 or 10 percent of the value of the claimed property, whichever is lower, but not less than $250 . . . such customs officer shall transmit such claim and bond . . . to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law.

---

to the claimant's residence satisfies due process, even if the claimant does not receive actual notice." *Lobzun v. United States*, 422 F.3d 503, 507 (7th Cir. 2005) (en banc).

- 7 -

Neither Section 1608 nor any other statute in Title 19 addresses waiver of a bond because a claimant is indigent. Waiver of bond is dealt with in 19 C.F.R. § 162.47(e), which provides that "[u]pon satisfactory proof of financial inability to post the bond, [CBP] shall waive the bond requirement for any person who claims an interest in the seized property."

If the requirements set forth in Section 1608 are not met by the property owner, then the property is forfeited to the government. Specifically, Section 1609(a) provides that "[i]f no such claim is filed *or* bond given within the twenty days hereinbefore specified" (which presumably means the 20 day time period set forth in Section 1608), the property is deemed forfeited to the United States and may be sold or otherwise disposed of. 19 U.S.C. § 1609(a) (italics added).

Here, Mr. Carrizoza filed a claim to the seized property and a request for waiver of bond based on his indigency within the 20 day period provided for in 19 U.S.C. § 1609. As a result, the "claimant effectively halt[ed] the administrative proceedings by compelling the seizing agency to refer the matter to the United States Attorney . . . for the institution of judicial forfeiture proceedings." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, the administrative proceedings were not halted and the forfeiture was not referred for judicial proceedings. Rather, CBP administratively forfeited the defendant's truck.

Apparently CBP made the determination that Mr. Carrizoza did not comply with Section 1609(a) because he did not either file a bond or prove indigency using the IFP application provided by CBP. CBP did not claim that Mr. Young's assertions about the defendant's indigency were facially unreasonable, but rather had some additional questions on this subject and wanted the IFP application completed. However, in doing so, the CBP imposed a 15 day time limit to supply the completed IFP application, or else concede to forfeiture, which is not found in any statute or regulation governing administrative forfeiture.

To be sure, this extra step of requiring a completed IFP application to be submitted

within 15 days in order to halt administrative proceedings and refer the matter for judicial action is not necessarily at odds with the statutes or regulations governing administrative forfeitures; nor does this extra step, in and of itself, violate a property owner's due process rights. However, "[b]ecause forfeitures are disfavored, forfeiture laws and their notice provisions are strictly construed . . . against the government." *United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003) (internal quotations and citations omitted). Accordingly, for the reasons discussed below, this Court finds that this extra step did violate Mr. Carrizoza's due process rights given: (1) the manner in which the IFP application was sent to defendant; (2) the failure of CBP to follow up with the defendant concerning his claim to the seized property, his allegation of indigency, and his request for judicial forfeiture, and (3) CBP's failure to notify the defendant that his request for a waiver of bond was denied and provide him with an opportunity to post a bond.

**C. CBP's Notice of the IFP Application and Bond Waiver Process was Constitutionally Deficient**

The first issue the Court must address is the sufficiency of the notice of CBP's requirement to submit a completed IFP application within 15 days in order for the forfeiture to be referred for judicial forfeiture proceedings. This Court may determine, with some flexibility, what procedural due process was required in sending the IFP application. *Mullane*, 339 U.S. at 657. As mentioned earlier, "[a]bsent exceptional circumstances, written notice of forfeiture by certified mail to the claimant's residence satisfies due process, even if the claimant does not receive actual notice." *Lobzun v. United States*, 422 F.3d 503, 507 (7th Cir. 2005) (en banc). However, where the administrative agency knows for a fact that the defendant has not received notice for an impending administrative process, the agency must act reasonably and attempt another written notice to the property owner. *Garcia v. Meza*, 235 F.3d 287 (7th Cir. 2000); 19 U.S.C. § 1607(a). While that is not precisely the case here, *Garcia* is instructive to the Court's due process analysis.

In *Garcia*, the INS seized $21,700.00 in cash from Mr. Garcia's home. The

government used Federal Express to send notice to all interested parties, including Mr. Garcia; however, the letter was returned to the government five (5) days later marked undeliverable. *Garcia*, 235 F.3d at 290. The court stated that the agency's notice to Mr. Garcia was adequate at the time that it was sent, yet it was important to determine whether the agency was required to do more because it knew that Mr. Garcia never received the notice. *Id.* at 291.

The *Garcia* court declined to adopt a per se rule that would only examine notice at the time that it was sent while turning a blind eye to subsequent events. *Id.* However, the court also declined to impose an affirmative duty upon the government to seek out claimants when the initial notice is returned undelivered or to require actual notice in every case. *Id.* Relying on *Mullane*, the court construed its responsibility as having to consider all circumstances of the individual case in order to determine whether notice was reasonably calculated to apprise a claimant of the impending proceeding. *Id.* [4]

The court ultimately found that the notice provided violated the property owner's due process rights. The court found it significant that the government was aware that the plaintiffs were actively pursuing their interest in the forfeited property. *Id.* Indeed, the court found it was ironic that the government could not provide the plaintiff with actual notice of the forfeiture proceedings given that the government was involved in extended litigation with the property owners. *Id.*

This Court finds that *Garcia* and the due process clause require that notice must be reasonably calculated to apprise a claimant of the importance of the IFP application in halting the administrative forfeiture process and referring the matter for judicial action. Mr. Carrizoza sent CBP an Election of Proceedings form requesting the transfer of the forfeiture proceedings to the USAO (Doc. 29–1 at 7–8) and a letter claiming he was indigent. Upon receiving the Election of Proceedings form, CBP sent Mr. Young a letter

---

[4] Subsequent to *Garcia*, the Ninth Circuit joined many other circuit courts in holding that "when initial personal notice letters are returned undelivered, the government must make reasonable additional efforts to provide personal notice." *Ritchie*, 342 F.3d at 911. As in *Garcia*, the Ninth Circuit held that "[w]hat additional efforts are reasonable will depend on the circumstances of the particular case." *Id.*

1   on February 6, 2015, along with the IFP application, stating that more information was
2   needed to satisfactorily prove Mr. Carrizoza's financial inability to post bond. (Doc. 29–1
3   at 10.) The IFP application was not sent via certified mail, which, absent exceptional
4   circumstances, is generally sufficient to afford a claimant with due process. Moreover,
5   Mr. Young had no reason to expect an IFP application because the Notice of Seizure and
6   Election of Proceedings form did not mention an IFP application that was required to be
7   completed in order to waive bond, halt administrative forfeiture, and have the case
8   referred for judicial proceedings. By the time Mr. Young actually received the IFP
9   application on June 16, 2015, the truck had already been forfeited (*i.e.*, on April 16,
10  2015).[5] *Id.*

11  Over two months elapsed between the time CBP sent the IFP application on
12  February 6, 2015, and CBP's forfeiture of Mr. Carrizoza's truck on April 16, 2015.
13  Clearly, unlike *Garcia*, CBP did not know that the defendant had not received the IFP
14  application.  However, there is also no evidence that CBP contacted Mr. Carrizoza or Mr.
15  Young about the status of the IFP application when it was not returned within the 15 day
16  period noted in CBP's letter (or at any time prior to forfeiture). The failure to conduct any
17  follow-up with Mr. Carrizoza or Mr. Young about whether the IFP application would be
18  submitted was significant because CBP knew that Mr. Carrizoza wanted the
19  administrative forfeiture to be halted and the matter referred to the USAO, as well as his
20  reasonable assertion of indigency. Again, Mr. Young had no reason to follow up with
21  CBP because he did all that the Notice of Seizure and Election of Proceedings form had
22  asked him to do—file a claim to the seized property and request that the bond be waived
23  based on the defendant's reasonable representations that he was indigent.

24  This Court concludes that, like in *Garcia*, because CBP was aware that the

---

[5] Interestingly, although the February 6, 2015 letter from CBP containing the IFP application says that the property would be forfeited if the IFP application was not received within 15 days, the truck was forfeited approximately 40 days after the date of the CBP letter.  This fact undercuts the notion that this 15-day time limit is strictly enforced by CBP and administrative forfeiture is initiated immediately if this deadline is not complied with.

- 11 -

defendant was actively pursuing his interest in the forfeited property, it was required to take reasonable steps to ensure notice of the IFP application. The IFP application is clearly significant to the administrative forfeiture process because the letter enclosed with the application sets forth CBP's requirement that Mr. Carrizoza provide CBP with his completed IFP application within 15 days of the letter or else his truck would be forfeited. *Id.* Given the importance of the IFP application to the forfeiture process as well as CBP's awareness that the defendant wanted to contest this forfeiture using the court process, this Court concludes that CBP did not take reasonable steps to ensure that Mr. Carrizoza was provided with constitutionally sufficient notice of the need for a completed IFP application in order to transfer the forfeiture for judicial proceedings.

Specifically, CBP's decision to use standard postage mail for the IFP application, which is just as important as the Notice of Seizure (at least to CBP), created an unreasonable risk to Mr. Carrizoza's ability to protect his property interest. *Mullane*, 339 U.S. at 659. The administrative forfeiture process, as interpreted by CBP, makes the IFP application integral to a property owner's ability to permanently halt the administrative forfeiture process and obtain judicial action. Indeed, the IFP application is essentially part and parcel of the Notice of Seizure for an indigent claimant, given that a failure to submit the completed IFP application within a short time frame adversely impacts the property owner's interest. Thus, CBP should have either sent the IFP application via certified mail, as it did for the Notice of Seizure and the letter advising Mr. Young that the truck had been forfeited, or followed up with Mr. Young or Mr. Carrizoza when the IFP application was not returned executed within the 15-day time period. *Id.*

This Court does not believe its decision places a substantial fiscal or administrative burden upon CBP. *Mathews v. Eldridge*, 424 U.S. 319, 909 (1976). Indeed, CBP could simply include the IFP application along with the Notice of Seizure and Election of Proceedings form (or at least mention the IFP application in those documents), both of which are required to be submitted to CBP in order for a property owner to halt the administrative forfeiture and request a judicial forfeiture proceeding,

rather than create this two-step process. Because CBP requires that both steps in this process must be completed in order to request judicial forfeiture, it is not burdensome for the government to either send the correspondence necessary for this process in either one mailing, use certified delivery/receipt for both mailings, or conduct some minimal follow-up with the property owner to determine whether proof of indigency will be provided, a bond will be posted, or if the property owner is abandoning any claim to the property.

### D. CBP's Failure to Provide Notice of the Denial of the Waiver of Bond Violated Due Process

While this issue is not raised by the defendant, this Court finds that another due process violation occurred in this case aside from notice used for the IFP application and the process for the determination of indigency. That is, CBP's failure to notify the defendant that his request for a waiver of a bond was denied, and provide him with the opportunity to post a bond. *See Application of Williams*, 628 F. Supp. 171 (E.D.N.Y. 1986).

In *Application of Williams*, the district court dealt with the constitutionality of IFP applications in the context of the Customs administrative forfeiture statutes. The government initiated administrative forfeiture proceedings against currency seized from the property owners. 628 F. Supp. at 172. The property owners sent a notice of claim requesting judicial forfeiture proceedings along with pauper's affidavits to the government. *Id.* Five weeks after receiving the claim, the government rejected the pauper's affidavits as lacking merit. *Id.* The property owners then sued to obtain the release of the currency. *Id.*

The issue before that court was whether the IFP provisions for administrative forfeiture proceedings deprived the property owners of their constitutional right not to be deprived of property without due process of law. The government argued that the IFP petition must be meritorious in the eyes of the government. *Id.* at 173. The property owners argued that "a pauper's affidavit alone complies with the bond requirement, even

1  if the [government] concludes that the affidavit lacks merit, for to allow any discretion to
2  the agency would unite the functions of adversary and arbiter." *Id.*

3  The court first noted that IFP provisions are constitutionally mandated for the
4  indigent in forfeiture proceedings. *Id.* However, the court further noted that "[i]n forma
5  pauperis claims raise practical as well as constitutional issues. The forfeiture situation is
6  one of inherent tension, with an individual's rights temporarily suspended. Action favors
7  the person claiming the rights to seized property; inaction the government, which has the
8  property." *Id.* The court held that an "appropriate balance requires a reasonable or good
9  faith claim of indigency. Where there is a doubt, the claimant must be afforded the right
10 to have the court determine good faith." *Id.*

11 The court pointed out that the government "does not warn a claimant of adverse
12 consequences if the [pauper's] affidavit is deemed not meritorious. It does not give notice
13 that compliance with the technical requirements must satisfy the agency director as to its
14 overall merit and honesty." *Id.* For those reasons, the court held that if the government
15 should "reject a pauper's affidavit that is not facially unreasonable, procedural fairness
16 dictates that it must allow petitioners to subsequently file the bond." *Id.*

17 In the case at hand, the Notice of Seizure does not even mention an IFP
18 application or explain what must be shown to demonstrate indigency, let alone advise a
19 claimant of the adverse consequences if the IFP application is deemed not meritorious.
20 *Application of Williams* makes clear that even if Mr. Carrizoza had received and
21 completed the IFP application within the 15-day limit imposed by CBP, the agency was
22 obliged under the due process clause to notify the defendant of the agency's
23 determination of his request for a bond waiver, and afford him the opportunity to post a
24 bond if the waiver request was denied. The same is true here when the defendant made
25 reasonable allegations of indigency, albeit not using the IFP application required by CBP.
26 Due process required CBP to notify the defendant that his bond waiver was denied—
27 either because he did not use the correct form to prove indigency or based on Mr.
28 Young's representations about the defendant's financial condition—and provide him with

a reasonable opportunity to post a bond. That was not done in this case. Accordingly, the Court finds that this due process violation voids the forfeiture as well.

### III.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned finds that the minimum due process requirements of *Mullane* were violated both by (1) CBP's failure to send the IFP application by certified mail or take other reasonable steps to ensure notice of the need for a completed IFP application, and (2) CBP's failure to notify the defendant of the denial of his request for a waiver of bond and allow him to post a bond. As such, the undersigned recommends that the District Court void the forfeiture and order CBP to either return the seized property to Mr. Carrizoza or begin judicial forfeiture proceedings.

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have fourteen (14) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court.  Any objections and Responses to objections filed should be filed as CR 14-02095-TUC-RCC.  No Replies shall be filed unless leave is granted from the District Court.

Dated this 18th day of April, 2016.

Eric J. Markovich
United States Magistrate Judge